MILLAR v. MACEY CO.

1. CONTRACTS—COMMISSIONS—BASIS OF RECOVERY.

Where plaintiff, under contract to sell defendant's products on commission, helped to obtain order for defendant which included goods it had to .purchase from another manufacturer, whether plaintiff was entitled to commission on such goods as defendant had to purchase, *held*, dependent on terms of his contract with defendant, and not on service he rendered in securing said order, in absence of any evidence that he was to receive any pay other than that included in his contract.

2. SAME—EXPRESS CONTRACT—DIFFERENCE AS TO TERMS OF CONTRACT PRESENTS JURY QUESTION—QUANTUM MERUIT.

Where express contract is entered into, but parties differ as to terms thereof, and there is evidence tending to support claim of each, it is for jury to determine what terms of contract were, and there can be no recovery on *quantum meruit*.

3. SAME—EVIDENCE—COMMISSIONS—VALUE OF SERVICES.

In action by salesman for commission on goods included in order which he helped to obtain for defendant, where plaintiff's right to recover depended on terms of his contract with defendant, there was error in admitting evidence of value of plaintiff's services in helping to secure said order.

4. APPEAL AND ERROR—EVIDENCE—TRIAL—INSTRUCTIONS.

Error in admitting evidence as to value of plaintiff's services, when his.right to recover was entirely dependent on contract, *held*, reversible, where jury might well have been influenced thereby both in their finding and verdict; and especially in view of court's instruction that, in determining what contract included, all evidence in case was to be taken into consideration.

Appeal from Kent; Perkins (Willis B.), J. Submitted April 18, 1933. (Docket No. 92, Calendar No. 37,180.) Decided June 5, 1933.

Assumpsit by John H. Millar against the Macey Company, a Michigan corporation, for commissions as sales representative and on the common counts. Verdict and judgment for plaintiff. Defendant appeals. Reversed, and new trial granted.

*Mason, Alexander, McCaslin & Cholette,* for plaintiff.

*Travis, Merrick, Johnson & McCobb,* for defendant.

SHARPE, J. The defendant is engaged in the manufacture of furniture in the city of Grand Rapids. In November, 1928, it secured a contract for the furnishing and office equipment of a building the Union Trust Company was erecting in Detroit, which amounted in all to the sum of $107,737.80. Of this amount $26,313.14 was manufactured by the defendant company; the balance by the Robert W. Irwin Company of Grand Rapids and sold by it to the defendant. It was all shipped to defendant's Detroit representative, and defendant was paid therefor.

Plaintiff's declaration consisted of two counts. The first contained the common counts. The second alleged that plaintiff was employed as a salesman by defendant, and was entitled to receive a commission of 3.65 per cent. on all furniture or office equipment sold by the defendant in his territory, which included the city of Detroit; that he devoted a great deal of his time in an effort to promote the sale of the merchandise purchased by the Union Trust Company, and as a result of such sale became entitled to a commission of 3.65 per cent. on the sales price thereof.

Defendant in its answer to the first count denied that it was indebted to the plaintiff in any amount, and in answer to the second count denied:

"That plaintiff was employed by defendant as salesman under a contract, as alleged by plaintiff in said paragraph, and states the fact to be that if plaintiff was employed by defendant as salesman, said employment was under an oral agreement whereby plaintiff would be entitled to commissions only on the sale of regular catalog lines or products of defendant in a prescribed territory, including the city of Detroit, Michigan."

On trial, before the court and a jury, plaintiff had verdict and judgment for $3,475, from which defendant has appealed.

In his direct examination of the plaintiff, after he had testified relative to the contract, his counsel sought to examine him as to the time he claimed to have spent in Detroit in helping to secure the contract with the trust company. The trial court at first held this testimony inadmissible, but later, and over objection, admitted it for the reason that, if his contract was not established, he might recover on the *quantum meruit* under the common counts. He thereupon testified that he had approximately 20 conferences and visits with the trust company architect, and that the time so spent by him "was probably about six weeks in all." He produced canceled checks and check stubs, cashed by him in hotels in Detroit for expenses amounting to $2,238.54, and stated that a conservative estimate of his expenses incidental to the trust company order was $1,000. He was then asked: "Now, what, in your judgment, forgetting there was any contract, forgetting any percentage, what in your judgment was a reasonable value for your services on this job?" and answered, "About $7,000 or $8,000."

Error is assigned upon the admission of this evidence, and also upon the instruction to the jury that if they did not find that the plaintiff was entitled to recover on the contract "he would be entitled to recover what his services were reasonably worth" which were "actually rendered and which were of utility and service to the defendant company in the procurement of this contract."

At the conclusion of the charge, the trial court submitted the following question to the jury:

"Do you find, from the evidence, that the shipment or shipments of furniture made by the defendant company to the Union Trust Company job and for which the plaintiff here seeks commission, comes within the terms of the contract which existed between the plaintiff and the defendant?"

They answered this question in the affirmative.

There is no dispute but that a valid contract was entered into by the parties under which plaintiff was to receive a 3.65 per. cent. commission on certain merchandise sold by the defendant. The plaintiff makes no claim that he was instructed by any of the officials of the defendant to make an effort to secure the order from the trust company. He testified that of his own. volition he called on the Detroit representatives of the defendant, and with them obtained interviews with the purchasing agent of the company, and on his return submitted the information received to the officials of the defendant. He was, of course, entitled to his commission on all merchandise, included in the order, which was manufactured by the defendant. We find nothing in his testimony from which even an inference might be drawn that he expected to receive, or that the officials of the defendant understood they were to pay him, a commission for services other than those included in his contract. He admits that at such

times, when in Detroit, he assisted defendant's local representatives in securing other orders for it, for which he was paid his commission.

Plaintiff's counsel in his opening statement to the jury based his claim upon the contract. When he first sought to introduce the testimony above referred to, the trial court said to him:

"If you were suing on the *quantum meruit,* this testimony would be clearly admissible, but you are suing on a contract whereby you were to receive a certain commission."

And counsel answered: "That is right."

It thus clearly appears that the only issue which should have been submitted to the jury was whether or not, under the terms of the contract, plaintiff was entitled to a commission on the merchandise manufactured by the Irwin company. He was in the service of the defendant, and was entitled to, and received, a commission on the merchandise it manufactured which was sold to the trust company. His right to a commission on the merchandise bought by defendant from the Irwin company was in no way dependent upon the service he rendered in securing the order from the trust company. It depended entirely upon the terms of his contract with the defendant.

The law in this State seems to be well settled that where an express contract is entered into between parties, but they differ as to the terms thereof, and there is evidence tending to support the claim of each of them, it is for the jury to determine what the terms of the contract were, and there can be no recovery on the *quantum meruit.*

In *Swarthout* v. *Lucas,* 101 Mich. 609, 612, it was said:

"There was no room for the jury to find an implied contract. Each claimed an express contract, and the sole question of fact was, which claim was the correct one?"

See, also, *Schurr* v. *Savigny,* 85 Mich. 144; *Shaw* v. *Armstrong,* 88 Mich. 311; *Ruttle* v. *Foss,* 161 Mich. 132.

Plaintiff's counsel rely upon our holding in *Van Fleet* v. *Van Fleet,* 50 Mich. 1; *In re Moon's Estate,* 219 Mich. 104; and *Brandt* v. *Munz,* 250 Mich. 172. In the first two of these cases there was denial that a contract was made, and in the last it appeared that there was no evidence of contract price. It follows that there was error in admitting the evidence above referred to.

Plaintiff's counsel insist that, in view of the answer of the jury to the special question, it is apparent that their verdict was founded thereon, and that the evidence submitted, which was objected to, "became merely surplusage." With this contention we cannot agree. The testimony of plaintiff as to the time he spent in Detroit and the large expense he there incurred, as well as his estimate of the value of the service so rendered, might well have influenced the jury in their finding and verdict, in view of the instruction of the court:

"Now, in determining just what the contract was, and what it included, you are to take into consideration all of the evidence in the case."

The other questions presented need not be considered, as they are not likely to arise upon a new trial.

The judgment is reversed and set aside, with costs to defendant, and a new trial ordered.

McDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.